The Honorable E. Ray Stalnaker State Representative 11714 Arch Street Pike Little Rock, AR 72206-4620
Dear Representative Stalnaker:
This is in response to your request for an opinion concerningAct 908 of 1997, entitled "An act to limit the authority of fire and casualty insurance companies to terminate agents appointed by such companies; and for other purposes." You have presented the following questions:
 1. Some licensed insurers are attempting to terminate with a 30 day notice. Are they in violation of section 1(b) of Act 908?
 2. Does section 1(c) of Act 908 mean that any insurance that the agent has in force at the time of the agent's termination, shall be subject to commissions being paid by the company to the agent for up to twelve months? (Assuming said insurance premiums are paid and policy is in force.) In addition, would these commissions be received regardless of the agent's age, if the agent's agreement with the insurer states that post-termination compensation is not paid unless the agent is of a certain age?
In addition, you have stated that "many contractual agreements between the insurer and the agent specifically spell out that the agent is an independent contractor, yet the insurer as part of this agreement specifically spells out age requirement restrictions of the agent as to receiving commissions subsequent to termination and also restricts the agent from acting as agent in other types of insurance even though his contractual agreement is as an independent contractor." In light of this situation, you have presented the following questions:
 3. Have any clauses such as these been challenged in the courts and decisions rendered or have any opinions been rendered from your office regarding this type of agreement?
 4. Would section 1(f) of Act 908 exclude agents who are independent contractors for an insurance company from the protections afforded agents in section 1 if the independent contractor's agency agreement limited his representation to one company and the book of business is claimed to be owned by the company?
RESPONSE
Section 1 of Act 908 of 1997 provides:
 (a) Any insurance company authorized to transact fire or casualty business in this state shall, upon termination of an agent's appointment by said company, permit the renewal of all contracts of insurance written by such agent for a period of twelve (12) months from the date of such termination, as determined by the individual underwriting requirements of said company, unless such insurance company is deemed by the Insurance Commissioner to be in a hazardous, impaired or insolvent condition. Provided, in the case of a contract not meeting such underwriting requirements, the company shall give the agent sixty (60) days notice of its intention not to renew said contract. Provided further that such periods of time may be reduced as the commissioner may deem necessary to adequately protect the insured or to secure the solvency of such company.
 (b) No insurance agency contract entered into in this state by a licensed insurer with an insurance agent licensed under 23-64-101 et seq. shall be terminated by the licensed insurer unless the agent is given at least ninety (90) days advance written notice of the intent to terminate the contract. Provided, if the contract is cancelled for failure of the agent to pay over moneys due the insurer after written demand therefor or for breach of contract, the advance notice shall not be required. Provided further, during the ninety-day period after any such notice, the licensed insurance agent shall not write or bind any new business on behalf of the licensed insurer without the specific written approval of such business by the insurer.
 (c) Any insurance company renewing contracts of insurance in accordance with this section shall pay commissions for such renewals to the terminated agent in the same amount as had been paid to him on similar policies during the twelve (12) months immediately preceding the notice of termination.
 (d) The provisions of this section shall not apply to any contract with an agent for the sale of life or accident and health insurance.
 (e) The provisions of this section shall not be applicable to any insurer which writes insurance only for members of a specific organization or to any agent of such insurer.
 (f) This section shall not apply to agents or brokers of a company or group of companies which agents or brokers by contractual agreement represent only that company or group of companies and the book of business is owned by the company or group of companies. The cancellation of any agent's or broker's contractual agreement shall not result in the cancellation or refusal to renew any policy of insurance.
Before addressing the questions that you have presented, it must be noted that it is unclear whether your questions concern "contractual agreements" entered into prior to the enactment of Act 908 or "contractual agreements" entered into subsequent to the enactment of Act 908. Arkansas Constitution article 2, § 17, and United States Constitution article 1, § 10, prohibit the enactment of laws "impairing the obligation of contracts." Thus, although it is clear that agreements entered into after the effective date of Act 908 are subject to its provisions, the state may not impair an already existing contract right in violation of the contract clause.
The question of whether an existing contract right has been unconstitutionally impaired will turn on the specific facts and the specific nature and provisions of the particular contract under consideration. See Op. Att'y Gen. 95-257. The review of particular contracts or other agreements is ordinarily outside the scope of an Attorney General opinion because such review necessarily entails factual determinations. Nevertheless, I will set out some legal principles that may be helpful in reviewing a particular agreement. The Eighth Circuit Court of Appeals has set out the following test:
 In practical terms, state legislation violates the Contract Clause if: (1) the state law operates as a substantial impairment upon a contractual relationship, and (2) the state cannot demonstrate a significant and legitimate public purpose behind the regulation. Even if the state can demonstrate a significant and legitimate public purpose, the legislation may be invalid if the legislation's adjustment of the contracting parties' rights and liabilities is not based upon reasonable conditions or is not of a character appropriate to the public purpose justifying the legislation's adoption.
In re Workers' Compensation Refund, 46 F.3d 813 (8th Cir. 1995). The Arkansas Supreme Court has held that legislation violates this constitutional principle if it operates retroactively so as to divest previously existing contractual rights. See Pyle v. Webb, 253 Ark. 940,489 S.W.2d 796 (1973); Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785
(1973); Op. Att'y Gen. 96-234; but see Reserve Vault Corp. v. Jones,234 Ark. 1011, 356 S.W.2d 225 (1962) (prohibitions found in contract clause do not prevent a proper exercise by the state of its police power).
Question 1 — Some licensed insurers are attempting to terminate with a 30day notice. Are they in violation of section 1(b) of Act 908?
The review of particular contracts or agreements is ordinarily outside the scope of an Attorney General opinion because such review necessarily entails factual determinations. In addition, the determination of whether section 1 of Act 908 is applicable to a specific insurance company or agent will also require a factual determination. Thus, I cannot opine as to whether a particular insurance company is in violation of section 1(b) of Act 908. I can, however, set forth applicable legal principles that may be helpful in evaluating a specific contract or factual situation.
Section 1(b) of Act 908 generally provides that no insurance agency contract entered into by a licensed insurer with an insurance agent shall be terminated by the insurer unless the agent is given at least 90 days written notice of the intent to terminate. Section 1(b), however, expressly provides that the advance notice is not required if the contract is canceled for failure of the agent to pay over moneys due the insurer after written demand therefor or for breach of contract. In addition, the provisions of section 1 are not applicable (1) to any contract with an agent for the sale of life or accident and health insurance and (2) to any insurer which writes insurance only for members of a specific organization or to any agent of such insurer.Act 908 of 1997, § 1(d) and § 1(e). Finally, section 1 is not applicable to "agents or brokers of a company or group of companies which agents or brokers by contractual agreement represent only that company or group of companies and the book of business is owned by the company or group of companies." Act 908 of 1997, § 1(f).
In sum, a factual inquiry, to be made on a case-by-case basis, would be necessary in order to determine whether a violation of Act 908 has occurred. In addition, if the insurer and agent entered into a contract prior to the effective date of Act 908, the specific provisions of the contract must be examined in order to determine whether an existing contract right would be unconstitutionally impaired under Act 908.
Question 2 — Does section 1(c) of Act 908 mean that any insurance thatthe agent has in force at the time of the agent's termination, shall besubject to commissions being paid by the company to the agent for up totwelve months? (Assuming said insurance premiums are paid and policy isin force.) In addition, would these commissions be received regardless ofthe agent's age, if the agent's agreement with the insurer states thatpost-termination compensation is not paid unless the agent is of a certainage?
As previously discussed, a factual inquiry would be necessary in order to determine whether section 1 of Act 908 is applicable to a particular situation. Nevertheless, assuming section 1 is applicable, paragraph (a) generally provides that an insurance company shall, upon termination of an agent's appointment, permit the renewal of all contracts of insurance written by such agent for a period of twelve months from the date of termination. Paragraph (c) provides that any insurance company that renews contracts of insurance in accordance with section 1 shall pay commissions for such renewals to the terminated agent "in the same amount as had been paid to him on similar policies during the twelve (12) months immediately preceding the notice of termination." Thus, in my opinion, paragraph (c) addresses only commissions for contracts of insurance renewed during the twelve month period following the date of termination. Commissions on contracts entered into or in force prior to termination of the agent are not governed by section 1(c) of Act 908.
As to the second part of your question, paragraph (c) provides that an insurance company shall pay commissions for contracts of insurance renewed in accordance with section 1 of Act 908. Thus, assuming the provisions of section 1 are applicable, payment of commissions pursuant to section 1(c) is mandatory. Again, however, it must be noted that the provisions of Act 908 may not be applicable to a contract entered into prior to the effective date of the act.
Question 3 — Have any clauses such as these been challenged in the courtsand decisions rendered or have any opinions been rendered from youroffice regarding this type of agreement?
There appear to be no reported decisions of Arkansas appellate courts addressing such a contract clause, and I have not issued an opinion regarding such a clause. It must, however, be noted that the review of particular contracts or other agreements is ordinarily outside the scope of an Attorney General opinion because such review necessarily entails factual determinations. For legal advice regarding the interpretation of a particular agreement, private counsel should be consulted.
Question 4 — Would section 1(f) of Act 908 exclude agents who areindependent contractors for an insurance company from the protectionsafforded agents in section 1 if the independent contractor's agencyagreement limited his representation to one company and the book ofbusiness is claimed to be owned by the company?
Pursuant to paragraph (f), section 1 of Act 908 is not applicable to "agents or brokers of a company or group of companies which agents or brokers by contractual agreement represent only that company or group of companies and the book of business is owned by the company or group of companies." It is, of course, a factual question as to whether an agreement limits representation to only one company and whether the "book of business" is owned by that company. Nevertheless, if an agent, by contractual agreement, may represent only one company and the book of business is owned by that company, then it is my opinion that section 1 of Act 908 would not be applicable.[1] In addition, the fact that an agent may be referred to as an "independent contractor" is not relevant to the foregoing analysis; section 1(f) simply refers to an agent that by "contractual agreement" represents only that company.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Although you state in your question that the book of business is "claimed" to be owned by the company, only a court may definitively resolve whether the book of business is in fact owned by the company.